DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

### MARCH TERM, 1885.

---

MARK W. BALL, PLAINTIFF IN ERROR, v. THE CHANCEL-
LOR OF THE STATE OF NEW JERSEY, DEFENDANT IN
ERROR.

A surety of a receiver in chancery held to be concluded in a suit at law
on the bond, by the amount found due on an account taken in chan-
cery, he having, by due notice, had an opportunity to intervene in the
taking of such account.

---

In error to Supreme Court.

For the plaintiff in error, *Gilbert Collins.*

Defendant was (with others) surety on a bond of M. Sand-
ford as receiver of an insolvent corporation, given in pursu-
ance of a provision in the order for his appointment, made
January 20th, 1875, requiring the receiver therein appointed
to give bond for the "faithful performance of his duties."
On April 9th, 1877, the Chancellor made an order allowing

125

compensation for the receiver's services " at the rate of $6000 per year from the date of his appointment." On January 10th, 1881, Sandford was removed and a new receiver was appointed. Sandford accounted, under order of the Chancellor, before a master. The sureties were notified as follows: '

" In chancery of New Jersey. In the matter of the insolvency of the Union Bank of Jersey City.

" Please take notice that an examination of the accounts of Michael Sandford, late receiver of the Union Bank of Jersey City, an insolvent corporation, for the purpose of ascertaining what, if any, balance remains in his hands due to the estate of said corporation, will be begun before Washington B. Williams, Esq., one of the special masters of this court, on Thursday, March 3d, 1881, at ten o'clock in the forenoon, at the office of the said master, No. 45 Montgomery street, Jersey City.

" This notice is given you as one of the bondsmen of said Michael Sandford as such receiver, in order that you may attend such examination, if you see fit so to do.

"WILLIAM P. DOUGLASS,
" Solicitor."

The sureties did not appear before the master. The master reported a large sum due from Sandford. In this report compensation was allowed Sandford at the rate fixed in the Chancellor's order only down to its date, and a small sum for compensation after that time. The report disallowed considerable sums actually paid by Sandford for clerk hire, on the ground that he could have dispensed with the clerks. It also disallowed many other claims of discharge made by Sandford. Sandford excepted, as did also some of the sureties, but not the defendant. The Chancellor confirmed the report (except as to a small item,) but the decree in terms ignored the sureties as having any standing in court, speaking of them as having appeared " without leave of the court." Sandford appealed, and this court affirmed the Chancellor's decree.

Ball v. Chancellor.

Suit was then brought on the bond against the defendant severally, and trial was had at Essex Circuit. Mr. Justice Depue held the accounting in chancery conclusive on the surety, and directed a verdict for the full penalty of the bond, which was less than the amount found due by the accounting. This writ of error brings up the exceptions taken to said ruling.

I. The damages on the bond were assessable at law, and the accounting in chancery was at most presumptive evidence thereof.

Normally, on a bond with condition, both the breach and the damages must be determined at law, and the constitutional guaranty of trial by jury is in force. To obviate the inconvenience arising from this rule, many bonds for the performance of official duty are by statute authorized to be so drawn as to submit the sureties to a different tribunal. For an illustrative example, see the prescribed form of an administrator's bond. *Rev., p.* 761, § 43. Doubtless it is competent for a court, making the giving of a bond a prerequisite to the appointment to an office within its gift, to prescribe the terms of the bond, and of course an obligor and sureties may voluntarily put themselves under any restrictions, but none of the above circumstances exist in the case before us.

1. The statute on "corporations" does not require a receiver to give bond.

2. The Chancellor's order requiring a bond did not provide for a conclusive accounting in his court.

3. The condition of the bond did not bind the sureties to such an accounting.

Mr. Justice Depue argues that the duty to account and pay over is a part of the duties which the bond undertakes that the receiver will "faithfully perform," but this is not clear. A receiver of an insolvent corporation has very broad discretionary powers (sections 72–77,) and when he has completed his trust it is made his duty (section 72,) "to pay into the Court of Chancery all the moneys and securities for money

arising from sales or which the said receiver shall collect or require, by virtue of the authority vested in him, to be disposed by the receiver from time to time, under order of the said court, among the creditors of said company, first making to the receiver such reasonable compensation as to the Chancellor may seem just and proper, and also deducting the costs of the proceedings in the said court."

Section 76 of the act requires an immediate inventory of the estate of the corporation, and a "report of proceedings" every six months. There is no provision for an accounting, though probably it is inferable under ordinary chancery procedure. We submit that there is no express or implied provision of the statute which vests in the Chancellor the power to decide, as against sureties, how much money the receiver must pay into court. The Chancellor may have control over the receiver as his officer, but the sureties have the right to the determination of the ordinary common law tribunals on this question. A stricter rule of responsibility might be justly applied to the receiver personally than to his sureties. In the very case before us the Chancellor held Sandford liable in large amounts for neglect because he had permitted the statute of limitations to run on a claim, because he failed to redeem check-stamps, &c. Had not the sureties a right to a jury on those points?

Certainly, the moneys which the receiver is required to pay into court are only the net proceeds of the insolvent estate. His disbursements, counsel fees, clerk hire, &c., are to be deducted in the natural order of things, even if they are not included in the language, "first, * * * also deducting the costs of the proceedings in said court." Have not the sureties of a receiver the right to dispute the Chancellor's determination of the necessity and good faith of the receiver's disbursements, and to go to the country on the issue? Have they not a right to the interpretation of the common law courts of the Chancellor's order for compensation? Wherein does this extra statutory bond they signed differ from any other bond for the faithful performance of duty, e. g., that of a city treas-

urer? In *Town of Union* v. *Bermes*, 15 *Vroom* 269, the Supreme Court held that the account of such an officer, presented to the city council under a provision of the charter that he should account, was *prima facie* evidence against his sureties, but was not conclusive. Suppose the charter had given the council power to audit the account, would the disallowance by the council of items of discharge reported by the treasurer be even *prima facie* evidence against sureties?

The sureties on a receiver's bond are indeed frequently held by the accounting in the court appointing, but this is because the "*conditions* of the security" are determined by the court at the time of the appointment. *High on Receivers*, § 118. "When the bond or recognizance given by a receiver is conditioned to be void if he shall duly perform his duties as receiver *and account to the court,* the obligation becomes absolute upon his failure so to do." *High on Receivers*, § 129. In the case which the respondent's counsel will cite from 118 *Mass.*, the condition of the bond was, *inter alia,* to "*truly and faithfully account.*"

The effect of the undertaking of the surety must be that he will be bound by a suit against or accounting by his principal, in order to make the same conclusive against him. See *Brandt on Suretyship*, §§ 524, *et seq.*, particularly sections 532 and 533, as to the difference between bonds of administrators, &c., and other official bonds.

Especial attention is requested to the learned discussion of this subject by Judge Esek Cowen, in *Douglass* v. *Howland*, 24 *Wend.* 35, beginning at page 52 of the report.

II. The notice to the sureties that the receiver was about to account before a master did not deprive them of their right to a trial by jury at law.

It is plain that if our first proposition is true, this second one necessarily follows. There is little doubt of the power of the Chancellor to call for an account from his own officer, and it was but courtesy to notify the sureties of the taking of the account. Perhaps such a notice was necessary to make

the accounting even *prima facie* evidence against the sureties, but surely, if the sureties were entitled to a common law trial and the verdict of a jury, a notice to them of an accounting in chancery could not deprive them of their rights.

III. If the sureties could be held by the accounting if properly notified, but not otherwise, then the notice in this case was not sufficient.

Mere notice to sureties is not enough. Even presence at the trial does not avail to bind them. There must be opportunity given them to defend. *Brandt on Suretyship*, § 524. The Chancellor expressly says that those parties who appeared had no leave to do so. Of what avail was the empty notice?

The judgment below should be reversed.

For the defendant in error, *Wm. P. Douglass.*

In January, 1875, the Union Bank of Jersey City became insolvent, and Michael Sandford was appointed receiver under section 71 of an act concerning corporations. *Rev.*, *p.* 189. Proceedings were afterwards taken in the Court of Chancery to compel the receiver to account, and on an accounting before a master he was found indebted to the estate in the sum of $30,625.90. Exceptions were taken to the master's report, and the amount was reduced by $527.29, and a decree made requiring the receiver to pay over the sum of $30,096.61 and interest from January 3d, 1883, the date of the master's report, and the costs of the exceptions. *Matter of Union Bank*, 10 *Stew. Eq.* 420.

An appeal was taken to this court, and the decree was reversed so far as it required the payment of the costs of the exceptions, otherwise it was affirmed and the cause was remitted to the Court of Chancery, where a new decree was made requiring the payment of the sum found due ($30,096.-61 and interest from January 3d, 1883,) within a certain time therein specified. *Sandford* v. *Clarke*, 11 *Stew. Eq.* 265.

Sandford failed to obey the decree, and the Chancellor or-

dered the prosecution of his bond, and several actions were brought against his sureties. This is one of these suits.

The bond given by Sandford on his appointment is several and not joint. The order appointing him receiver was on condition that he should give such a bond, and is authorized by the statute. *Rev., p.* 190, § 73. The receiver was an officer required to give bond before entering on the discharge of his duties, and the Court of Chancery had a right to impose these terms. This bond is therefore an official bond.

The duties of such a receiver are prescribed by the statute. among them is the duty " to pay into the Court of Chancery all the moneys and securities for money arising from such sales, or which the said receiver * * * shall collect or receive by virtue of the authority vested in them." *Rev., p.* 189, § 73. This necessarily implies an accounting in the Court of Chancery of the moneys and securities received. And the receiver is always under the control of the Court of Chancery, which has power to make to the receiver " such reasonable compensation as the Chancellor may deem just and proper." The question of the receiver's compensation is wholly to be determined in the Court of Chancery.

The first and second errors are not well assigned. They are based upon the assumption that the proceedings in the Court of Chancery in the cause in which the receiver was appointed, and in which his compensation was fixed, his account taken and his liability to the estate ascertained, should not have been admitted in evidence in an action against plaintiff in error, who was one of his sureties. The receiver's bond was conditioned that he should " faithfully perform the duties of his office as such receiver." Not having done this, his sureties are liable for his default, and the bond and the decree of the Court of Chancery on the accounting fix the liability of the surety, and the proceedings in the latter court were " competent evidence against his sureties as well as himself, both of a breach of his bond and of an amount due from him upon such breach, for which they are responsible." And " the question, What compensation, if any, is due to this re-

ceiver, can only be determined in the cause in which the receivers were appointed." *Commonwealth* v. *Gould*, 118 *Mass.* 300, *especially page* 307.

The surety's liability extends to all that the receiver would have been required to pay, including the cost of appointing a new receiver. *Mannsell* v. *Egan*, 3 *Jones & La T.* 251. This evidence was not only competent, but conclusive, even in the absence of notice to the plaintiff in error of the accounting. *Heard* v. *Lodge*, 20 *Pick.* 53, 58. But he had notice of the accounting and took no steps to protect himself or his interest. The notice which was served on the plaintiff in error was in evidence at the trial, and service of it was admitted.

There is no question but that the surety might have protected himself in this notice. The practice is well established that "the surety may have leave to attend the passing of the account." *Dawson* v. *Raynes*, 2 *Russ.* 466.

As to the third and fourth assignments, if the views above stated and authorities cited have any weight, these assignments are already disposed of.

The fifth and sixth assignments are to the refusal of the judge to charge that only nominal damages could be recovered. The evidence showed the receiver to be a defaulter to the extent of over $30,000, and likewise showed the creditors of the estate unpaid to an amount exceeding the penalty of the bond. It is evident that there was here substantial damages which the full penalty of the bond would not satisfy.

The seventh assignment is to the charge of the court to the jury. If this evidence was as above stated, and was conclusive, the considerations above urged necessarily controlled the court in its charge, and the charge was according to law. In *Dawson* v. *Raynes, supra,* it is held that "the penalty is forfeited by the breach of the condition; the amount of the penalty is the debt due from the sureties at law." This was the case of a receiver.

The case upon which the plaintiff in error relies is that of *Douglass* v. *Howland*, 24 *Wend.* 35, in which an elaborate opinion was rendered by Cowen, J., but an examination of

this opinion, especially pages 55 and 56, will show conclusively that the current of judicial decision at that time was in favor of the binding force of a decree against an officer in a suit against his surety, when it was part of the duty of the principal to account in the court in which the decree was made, there being no allegations of mistake or collusion.

We submit that there is no error in the record, and that the judgment of the Supreme Court should be affirmed.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   This is a suit against a surety on the bond of a receiver appointed by the Chancellor, on proceedings in his court winding up the affairs of an insolvent bank.   Such receiver was appointed by force of the seventy-second section of the act concerning corporations, whereby it is made the duty of such officer, among other things, in the statutory language, " to pay into the Court of Chancery all the moneys and securities for money arising from such sales, or which the said receiver or receivers, &c., shall collect or receive by virtue of the authority vested in them, to be disposed of by the said receiver, &c., from time to time, under the order of the said court, among the creditors of the said company, first making to the receiver, &c., such reasonable compensation as the Chancellor may deem just and proper, and also deducting the costs of the proceeding in the said court."   *Rev.*, *p.* 189.

By the following section of this same law the receiver is required, besides taking a prescribed oath of office, to " comply with such terms as the Chancellor in his order appointing him may prescribe," and in the present instance, which was in accordance with the usual practice, this officer was directed to execute a bond, with which mandate he complied, giving the obligation now in suit, the condition of such instrument being that the receiver " shall faithfully perform the duties of his office as such receiver."

From the developments at the trial at the Circuit Court it appeared that, upon the petition of creditors, the receiver had

been ordered by the Chancellor to render an account, and that it had been, in the ordinary course, referred to a special master to take such account and to report thereupon.   Due notice of the taking of this account before the master was given by the solicitor of the petitioning creditors to the appellant and the other bondsmen of the receiver, in which it was stated that they might attend such examination if they saw fit so to do. Upon the coming in of the master's report an order *nisi* to confirm the same was taken, and a copy served on the appellant. Some of the co-sureties with the appellant filed exceptions. The receiver appealed from the decree of the Chancellor to the Court of Appeals, and on the *remittitur* from that court a final decree was entered finding the receiver in arrears in a sum much larger than that for which the appellant stood bound.

At the trial the counsel of the appellant insisted that the decree ascertaining the amount of money for which the receiver was in default was not competent evidence against the appellant, and, in the next place, that if it was competent it was not conclusive, and that the accounts of the receiver could be restated by the jury.   The judge trying the case charged the reverse of both these propositions, and the correctness of charge is the subject to be passed upon on this writ of error.

The general principles that regulate the subject thus introduced have not been, in all cases, very clearly defined by the decisions, for the judicial views in this field are not to be reconciled.   And yet, however much this may be the state of affairs with respect to some of the particulars embraced within the scope of the topic, the rule applicable to the present facts may be considered to be settled by a weight of authority and reason that may be said to have laid it at rest.   That rule is, that when it is the duty of the principal to account in the business undertaken by him, such accounting is a part of the *res gestœ*, and such settlement, legally and fairly made, will be obligatory on the surety in all cases to the extent, at least, of being evidence against him in a suit on his contract of suretyship. This principle is illustrated and declared in the case of *Town*

*of Union* v. *Bermes,* 15 *Vroom* 269. And I also think that when such accounting, as a part of such *res gestæ,* is to take place before a court of judicature, that the judgment of such tribunal will be as conclusive upon such surety as it is upon the principal. Nor does it make any difference, in these respects, whether the duty of the principal to make such accounting be expressly stipulated for in the instrument composing the suretyship, or such obligation is merely to be necessarily inferred from the nature of the business in question. It should be noted that the rule thus delineated would not embrace ordinary judgments obtained against the principal for breaches of duty in the course of the guaranteed business, so as to make them, *per se,* evidence in a suit against the party, for such judgments are no part of the *res gestæ ;* and, in order to render such recoveries efficacious for the latter purpose, an opportunity must have been afforded the surety, by notice or otherwise, of taking part in the defence of the primary action. *Kip* v. *Brigham,* 6 *Johns.* 158 ; *Thomas* v. *Hubbell,* 15 *N. Y.* 408.

It would seem to me to be difficult to assign any reason why the legal rule above stated, to the effect that a judgment on an accounting made by a principal should not be admissible in evidence in a suit against the surety by reason of the withholding of the amount so settled, when the rendering of such account in the mode adopted was a part of the conduct of the principal embraced in the terms of the suretyship. It is then clearly part of the *res gestæ, i. e.,* of the business the faithful performance of which forms the staple of the guaranty. If it is not admissible in evidence against the surety, then it must follow that none of the doings of the principal in the business are so admissible.

In the case in hand it was the plain duty of the receiver to account in the Court of Chancery, and to pay over the amount found due from him in that proceeding ; and when the appellant stipulated for his good conduct in office, he just as clearly covenanted that the principal would do those particular acts as if such duties had been specifically designated in the obli-

gation signed by him. Therefore, if the case were presented I should be inclined to hold that the decree in question would have conclusively bound this surety even in the absence of a notice to him of the pendency of such proceeding .

But, on the present occasion, all that this court is called upon to decide—and which is, consequently, all that is passed upon—is whether this decree, which ascertained in his accounting the amount due from this receiver, is competent and conclusive evidence against the appellant, he having had an opportunity to intervene and co-operate in such settlement. It clearly appears that he was notified of the hearing before the master, and of the coming in of the report of that officer, and therefore, according to the well-settled practice of the Court of Chancery, it was within his power to put in question any pertinent matter he deemed contestable. In point of fact, some of the other sureties on this bond took that course. This appellant, consequently, was as much a party, for every substantial purpose of the judicial procedure referred to, as though the proceeding had been a formal suit against him and his principal. Under such conditions, I do not find that it has ever been held that a decree of this nature was not both admissible and conclusive upon all the persons thus directly involved in it. Such was the opinion of the court in the case of *Methodist Episcopal Church* v. *Barker et al.*, 18 *N. Y.* 463. An opposite view would be attended by enormous embarrassments. If the entire account can be overhauled at the instance of the surety, it is obvious that no reasonable investigation of such multiform matters could be made by a jury. In the present instance, an ascertainment of the sum due from this receiver would be impossible in the legal forum, as the statute requires the Chancellor to fix the amount of his commissions. The Circuit judge was plainly right in admitting the evidence in question and in his ruling that it was conclusive on the surety.

Let the judgment be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE,

N. Y., L. E. & W. R. R. Co. v. Haring.

KNAPP, MAGIE, PARKER, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, PATERSON. 12.

*For reversal*—None.